IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **FAHD BIN SALIH BIN SULAIMAN AL-JUTAILI, by and through his next friend, SALMAN SALIH AL-JUTAILI,**[1] | ) | |
| **Petitioners,** | ) | |
| **v.** | ) | **No. 1:05 CV 01669 (TFH)** |
| **GEORGE W. BUSH, DONALD RUMSFELD, ARMY BRIG. GEN. JAY HOOD, and ARMY COL. MIKE BUMGARNER,** | ) | |
| **Respondents.** | ) | |

**PETITIONERS' REPLY BRIEF IN SUPPORT OF MOTION FOR ORDER REQUIRING RESPONDENTS TO PROVIDE THE COURTAND COUNSEL FOR PETITIONERS WITH 30 DAYS' ADVANCE NOTICE OF ANY REMOVAL OF PETITIONER FROM GUANTÁNAMO**

## INTRODUCTION

Petitioner Fahd Bin Salih Bin Sulaiman Al-Jutaili, by his counsel, respectfully seeks 30 days' advance notice of any removal of Petitioner from Guantánamo Bay Naval Base in Cuba. Notice is all we seek; by this motion we are not asking for any restraints on the government. Notice of transfer is a reasonable condition to impose on the Respondents' pending request that these proceedings be stayed, and notice will protect this Court's jurisdiction to hear this important case. As set forth in Petitioners' Motion and Memorandum in support ("Petr. Br."), this identical relief has been granted by six judges in 25 other Guantánamo detainee cases pending in this District.

[1] Petitioners' names were previously misspelled "Fahad Saleh Algatele" and "Salman Saleh Algatele," respectively, on Petitioner's original petition for writ of *habeas corpus*. Counsel for Petitioner have notified Respondents' counsel of the correct spelling and have filed an unopposed motion to modify caption and for leave to amend petition for writ of *habeas corpus* to reflect the correct English spellings of these names.

Public reports demonstrate that Respondents have removed other detainees from Guantánamo to foreign territories, including a number of detainees transferred to Saudi Arabia who were immediately imprisoned by the Saudi government. By Respondents' own admission, they have transferred 76 detainees who were not released upon transfer. Resp. Br. at 4 n.4. Respondents have announced that they intend to transfer other detainees, (*see* Petr. Br., Exhibit A), but they have refused to identify these transferees or to state whether they intend to transfer this Petitioner to Saudi Arabia or some other foreign government. Petitioners request advance notice to enable counsel the opportunity, if warranted, to contest any such removal from Guantánamo and to preserve the jurisdiction of the Court in this matter.

At the time Petitioners filed their Motion, this case was pending before Judge Richard Roberts. Petitioners, therefore, tailored their Motion and memorandum to address prior rulings by Judge Roberts in which he granted the relief requested here. As a condition of staying the proceedings, Judge Roberts ordered Respondents in six cases to provide advance notice of transfers. Petr. Br. at 7. Since the filing of this Motion, this case has been transferred to Your Honor. To the best of our knowledge, Your Honor has not issued any rulings on this issue in any related case.

**ARGUMENT AND CITATION OF AUTHORITIES**

**I. Petitioners Request a Reasonable Condition to a Stay of the Proceedings**

Petitioners are not asking for a preliminary injunction. Rather, Petitioners request notice as a reasonable condition to the Government's request for a stay of the proceedings. Several judges within this District have granted this relief to detainees as a condition of staying the proceedings.

Judge Roberts, in *El-Banna v. Bush*, No. 04-1144 (Apr. 8, 2005) (attached as Exhibit A), stated that if the petitioners were transferred, it would "improperly subvert the court's ability to

adjudicate these actions on their merits…[and] would nullify the stay's purpose of preserving the status quo between the parties." In support of the court's authority to impose a condition upon a stay, Judge Roberts noted that "a court may, in appropriate situations, specify protective conditions in balancing the hardship necessarily imposed on the party whose suit or execution of judgment has been stayed pending appeal." *Id.* Judge Roberts explained that "where, as here, the condition imposed on the proponent of the stay is 'neither heavy nor unexpected,' imposing a protective condition is well within a court's discretion." *Id.*

Respondents do not address the possibility of granting the relief requested here as a condition of staying the proceedings, despite the fact that judges in twelve cases in this District have embraced this rationale when granting this relief to other similarly situated petitioners. *Ahmed v. Bush*, 2005 U.S. Dist. LEXIS 14024 (July 8, 2005) (RWR) (attached as Exhibit B); *Amir v. Bush*, No. 05-1724 (Oct. 5, 2005) (RMU) (attached as Exhibit C); *Al Daini v. Bush*, No. 05-634 (June 6, 2005) (RWR); *Adem v. Bush*, No. 05-0723 (June 6, 2005) (RWR); *El-Banna*, No. 04-1144 (Apr. 8, 2005); *Abdullah v. Bush*, No. 04-23 (Apr. 8, 2005) (RWR); and *Al Rashaidan v. Bush*, No. 05-586 (Apr. 8, 2005) (RWR); *Hatim v. Bush*, No. 05-1429 (Aug. 22, 2005) (RMU); *Al-Hela v. Bush*, No. 05-1048 (June 3, 2005) (RMU); *Tumani v. Bush*, No. 05-526 (Apr. 6, 2005) (RMU); *Qayed v. Bush*, No. 05-454 (Apr. 6, 2005) (RMU); and *Al-Oshan v. Bush*, No. 05-520 (Mar. 31, 2005) (RMU).[2]

Petitioners therefore request that 30 days' notice of transfer be required as a condition of granting the Respondents' motion to stay these proceedings.

[2] As noted in Petr. Br. at 9-10, to the best of our knowledge, four Judges in this District have denied requests for notice.

**II. Petitioners Meet the Preliminary Injunction Standard**

Even if Your Honor chooses to apply a preliminary injunction standard, two judges of this District, in seven cases, have found that similarly situated petitioners met the preliminary injunction standard. *Abdah v. Bush*, 2005 U.S. Dist. LEXIS 4942, at *24 (Mar. 29, 2005) (HHK) (attached as Exhibit D); *Al-Marri v. Bush*, 2005 U.S. Dist. LEXIS 6259 (Apr. 4, 2005) (GK) (attached as Exhibit E); *Al-Joudi v. Bush*, 2005 U.S. Dist. LEXIS 6265 (Apr. 4, 2005) (GK) (attached as Exhibit F), involving four Saudi Arabian detainees; *Anam v. Bush*, No. 04-1194 (May 9, 2005) (HHK); *Al-Mohammed v. Bush*, No. 05-247 (Mar. 30, 2005) (HHK); *Alhami v. Bush*, No. 05-359 (June 9, 2005) (GK); and *Al-Adahi v. Bush*, No. 05-280 (Apr. 28, 2005) (GK).

Respondents argue that a preliminary injunction is not warranted because injunctive relief is "extraordinary." Resp. Br. at 8. However, the facts of this case are far from ordinary, and they are indeed extraordinary. In an *ordinary* case, a plaintiff has not been held virtually incommunicado for more that 3 years and is not at risk of being transferred to a foreign detention center outside of the Court's jurisdiction. In an *ordinary* case, a petitioner has the opportunity to present his own testimony. In an *ordinary* case involving a request for habeas relief, there have typically been extensive prior state or federal legal proceedings subject to full judicial review, and no discovery may therefore be necessary. None of these "ordinary" circumstances exist here.

Moreover, this Circuit has found that "[a]n order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant." *Al-Joudi*, 2005 U.S. Dist. LEXIS 6265 at *11 (citing *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)). Indeed, it is well-established that the preliminary injunction factors "interrelate on a sliding scale and must be

balanced against each other." *Id.* at *10 (citing *Serono Lab. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998). Therefore, "when the balance of hardships tips decidedly toward the movant, 'it will ordinarily be enough that the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" *Id.* (citing *Washington Metro.*, 559 F.2d at 844).

**A. Petitioner Will Suffer Substantial and Irreparable Harm if Rendered to a Foreign Nation Without Notice or Any Opportunity to Be Heard**

Respondents claim that the mooting of a habeas claim that results from a relinquishment of United States custody does not constitute irreparable injury. Resp. Br. at 9. Judge Kessler, however, in *Al-Joudi*, 2005 U.S. Dist. LEXIS 6265, observed that "given the danger that, upon transfer, the Court could lose jurisdiction to adjudicate Petitioners' claims, it follows that such a transfer could obviate Petitioners' right to 'test the legitimacy of their executive detention.'" *Id.* at *14. Judge Kessler found that "such a turn of events would certainly constitute a threat of irreparable harm." *Id.* Similarly, Judge Kennedy in *Abdah*, 2005 U.S. Dist. LEXIS 4942, at *13, found that a transfer that "eliminate[d] any opportunity for Petitioners to ever obtain a fair adjudication of their 'fundamental right to test the legitimacy of [their executive detention]" clearly qualified as an irreparable injury under the preliminary injunction standard.

In support of their position, Respondents cite *Almurbati v. Bush*, 366 F. Supp.2d 72 (Apr. 14, 2005) (RBW) and *Al-Anazi v. Bush*, 370 F. Supp. 2d 188 (Apr. 21, 2005) (JDB) for the proposition that the objective of a habeas petition is release from custody. While *Almurbati* and *Al-Anazi* make this point, Judge Walton in *Almurbati* nevertheless required Respondents to submit a declaration to the court "advising it of any transfers and certifying that any such transfers or repatriations were not made for the purpose of merely continuing the petitioners' detention on behalf of the United States of for the purpose of extinguishing this Court's

jurisdiction over the petitioners' actions for habeas relief for a reason unrelated to the decision that the petitioners' detention is no longer warranted by the United States." *Id.* at 844. Like the detainees in *Almurbati*, Petitioner does ultimately seek release from custody. However, Petitioner's interests are ill-served by a clandestine transfer from United States custody to a foreign nation's custody.[3]

Respondents also claim that Petitioners have not carried their burden to show that irreparable injury of torture is certain and substantial. Resp. Br. at 11. Judge Kessler in *Al-Joudi*, 2005 U.S. Dist. LEXIS 6265, found that although the Respondents presented declarations that attempted to mitigate the concerns of torture and indefinite confinement in a foreign country, "they neither refute Petitioners' claims nor render them frivolous." *Id.* at *12. The Respondents offer updated declarations in this case, but the substance of these declarations closely follows that offered in *Al-Joudi*. Additionally, in *Al-Joudi*, Judge Kessler observed that the Respondents were unable to "provide any details about the type or form of 'assurances' given, the scope of monitoring that takes place after transfer, or the consequences of noncompliance." *Id.* at *13. In the instant case, Respondents have been similarly unable to offer sufficient detail about the circumstances of transfer to a foreign country.

[3] Similarly, in denying the request of notice in *Al-Anazi*, Judge Bates relied heavily on representations by the Government that once a detainee is transferred from Guantánamo, the detainee is no longer in the custody and control of the United States and that the United States does not transfer detainees out of Guantánamo to thwart the actual or putative jurisdiction of any court. *Id.* 190-91, 195-96. Furthermore, in *Al-Anazi*, Respondents pledged to inform the Court if the United States ever were to begin to transfer detainees overseas for continuing United States custody. *Id.* at 196-97. Likewise, when Judge Bates denied the request of notice in *O.K. v. Bush*, No. 04-1136 (July 12, 2005), he once again relied on similar representations by Respondents and explicitly stated that he continued "to regard the respondents as bound to the pledge the Court understood them to make at a hearing in *Al-Anazi* that they will inform the Court if these policies change and they begin transferring Guantánamo detainees overseas for ongoing United States custody." *Id.* at 23 n.13.

Indeed, although the Respondents apparently deny that the detainees will more likely than not be subject to torture by the government of Saudi Arabia (the home country of Petitioners), Resp. Br. at 11-12, and rely on State Department Officials for support, the United States government has already recognized the danger of torture and abuse to those detained in Saudi Arabia, saying the following in its August 2005 Background Note on Saudi Arabia:

> Despite close cooperation on security issues, the United States remains concerned about human rights conditions in Saudi Arabia. *Principal human rights problems include abuse of prisoners and incommunicado detention.*

(Petr. Br., Exhibit C.) In its 2003 Country Report on Human Rights Practices in Saudi Arabia, the State Department stated:

> [T]here were credible reports that the authorities abused detainees, both citizens and foreigners. Ministry of Interior officials were responsible for most incidents of abuse of prisoners, including beatings, whippings, and sleep deprivation. In addition, there were allegations of torture, including allegations of beatings with sticks and suspension from bars by handcuffs. There were reports that torture and abuse were used to obtain confessions from prisoners.

(Petr. Br., Exhibit D.) In 2005, the State Department reiterated its concern about Saudi torture and abuse of prisoners, also noting that:

> During [2004], the Mutawwa'in [religious police] harassed, abused, and detained citizens and foreigners of both sexes. . . . Mutawwa'in abuses continued during the year, despite an initial decrease following the May 2003 terrorist attacks.

(Petr. Br., Exhibit E.)

Respondents fault Petitioner for failing to provide an incident where a Guantánamo detainee who was transferred to a foreign country suffered torture, mistreatment or indefinite detention involving United States complicity. Resp. Br. at 12. However, Respondents have created the lack of information about such matters through practices such as denying counsel

CHICAGO_1342954_2

access to, or information about, clients held in Respondents' exclusive custody and opposing a factual return in this case. Moreover, Petitioners, in their opening brief, provided articles and case law that discuss the transfer of detainees out of Guantánamo, and specifically to Saudi Arabia, where some have been held virtually incommunicado. Petr. Br. at 3-4.[4]

The need for this Court to grant the requested relief is especially pressing due to the increasing number of accounts in which Respondents have engaged in extraordinary rendition. According to several news reports already cited by Petitioners, the United States has secretly removed detainees and others suspected of terrorist crimes to other countries for interrogation or detention without complying with extradition or other legal process. Petr. Br., Exhibit F; *see also* Petr. Br., Exhibit I.

The declaration Respondents offer from Mr. Waxman itself acknowledges that it is the United States' policy to "transfer[] GTMO detainees . . . to the control of other governments for continued detention, investigation and/or possible prosecution" where the government functionaries deem it appropriate. *See* Resp. Br. Exhibit A at ¶ 3. Furthermore, out of the 211 detainees that Respondents transferred from Guantánamo to foreign countries, seventy-six of those detainees were provided to foreign governments for ongoing detention. Resp. Br. at 4 n.4. Four of the detainees were "sent abroad [to Saudi Arabia] on the condition that they continue to be detained." *Abdah*, 2005 U.S. Dist. LEXIS 4144, at *16.

Respondents' documented practice of transferring suspects outside the United States substantiates Petitioners' fears of being deprived of United States judicial protection. As Judge

[4] Respondents also discuss the annual Administrative Review Board process, including alleged invitations to counsel to make written submissions about their client's detention, as part of their transfer and detention process. Resp. Br. at 3-4. However, there has been no such invitation in this case, and while the government may conduct these reviews, they have not disclosed the results of any review to Petitioner's counsel.

Roberts recognized in a similar case, concern about transfer to another country with a history of torturing prisoners is not merely "fanciful." *El-Banna*, No. 04-1144. Moreover, whether Petitioners are subject to a transfer tomorrow, or next week, or the week after that, such facts are exclusively within the control of the Respondents. In sum, there is substantial evidence of Respondents engaging in the practice of rendition; the most compelling is from Respondents' own statement that they will not disclose whether or when such transfers will take place. *See* Petr. Br., Exhibit M. Petitioners have presented a sufficiently severe and substantial risk of harm to justify the limited relief requested.

**B. Likelihood of Success on the Merits**

Respondents argue that the Petitioners have not established that they possess a legal basis for a judicial order enjoining transfer or repatriation of detainee. *See* Resp. Br. at 13. We repeat, however, that we are <u>not</u> seeking that relief at this time. We ask only that the Court order 30 days' notice of a transfer so we can, if warranted, raise issues relating to the proposed transfer at an appropriate time. Two judges of this District have found likelihood of success on the merits in seven other Guantánamo detainee cases. The Respondents fail to address those rulings.

Judge Kennedy in *Abdah*, 2005 U.S. Dist. LEXIS 4942, stated that "Respondents are wrong, however, in arguing that…there is no legal basis for judicial involvement in transfer or repatriation decisions regarding Petitioners." *Id.* at *15. In *Abdah*, Judge Kennedy found that Federal Rule of Appellate Procedure 23(a) forbid transfer of the petitioners without notice and leave of the court. Respondents claim that Fed. R. App. P. 23(a) "does not require notice of transfer that constitutes a complete relinquishment of custody, as in the case of return of wartime alien detainees to their own countries." Resp. Br. at 15, n.9. However, Judge Kennedy rejected this argument in *Abdah,* noting that "Rule 23(a) acquires an even greater importance in the

context of Petitioners' case." *Id.* at *16. Unlike a transfer to another state, the transfer of Petitioners here would deprive this Court of its jurisdiction. *See id.* at *17.

Moreover, even if the exact chance of success in this case is difficult to assess, Petitioners have raised fair grounds for litigation. As stated by Judge Kessler in *Al-Joudi*, 2005 U.S. Dist. LEXIS 6265, "the issues raised in these motions are sensitive and involve complex constitutional questions." *Id.* at *16. While disagreement may exist among the judges of the District about the legal issues raised in these petitions, the questions raised here as "'so serious, substantial, difficult, and doubtful,' as to make them a 'fair ground for litigation.'" *Id.* at *18 (quoting *Washington Metro. Area Transit Comm'n*, 559 F.2d 841, 844 (D.C. Cir. 1977).

The Supreme Court in *Rasul v. Bush*, 124 S. Ct 2686 (2004), confirmed this Court's jurisdiction, and Judge Green in the consolidated Guantánamo cases ruled that valid claims exist. The issue, then, is not simply whether Petitioners might, in the abstract, have standing to file a separate lawsuit alleging independent grounds to block the Government's planned transfers if they were otherwise not in Court.[5] Instead, the salient question is whether this Court, having already accepted jurisdiction over a live controversy, may act to preserve its jurisdiction already properly exercised. The answer to that question is clearly "yes."

**C. The Requested Injunction Would Cause Respondents No Cognizable Harm**

Respondents fail in their attempt to demonstrate some "harm" to themselves. In fact, Judge Kennedy in *Abdah,* 2005 U.S. Dist. LEXIS 4942, characterized the relief requested as not

[5] Although unnecessary to the resolution of this motion, which does not ask this Court to rule on any substantive claims, Petitioners continue to submit that they do possess such independent rights pursuant to the Geneva Conventions, as well as under articles 1 and 3 of the U.N. Convention against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, article 7 of the International Covenant on Civil and Political Rights, and article 5 of the American Convention on Human Rights, among other sources. As noted, however, no ruling on these issues is necessary – preliminary injunctive relief rarely resolves substantive rights; it merely preserves the status quo while the disputes are addressed in litigation.

constituting "even a minimal burden on the Government; at most it would require the Government to file a few pieces of paper." *Id.* at *19. The requested relief does not prevent or prohibit the Respondents from obtaining "assurances" from a foreign government. Certainly, this Court may lift or modify an injunction if the Respondents can demonstrate a justification for doing so, and the *only* effect the requested notice would have in this case would be to permit the Petitioners to challenge a transfer, and prevent the possible loss of this Court's jurisdiction, before that transfer takes place.

Nor is there any legitimate fear of "disclosure" of confidential communications with a foreign government. Respondents' alleged "chilling effect" would come from "public" disclosures, Resp. Br. at 16, but there can be no dispute that, in this case, secure facilities have already been established, specifically for the handling, review and maintenance of sensitive classified information, and that counsel for Guantánamo detainees have access to extensive information that will not be shared either with the public or with their clients. Respondents have failed to identify any manner in which "sensitive" negotiations would be affected if they were "disclosed" only to the Court and counsel in this case, in the context of sealed communications reviewable only in the secure facilities that have already been established.

**D. Public Policy Clearly Favors the Requested Information**

The Respondents assert that they, and only they, can determine whether or when a Guantánamo detainee should be transferred to a foreign country, and that they will do so unless they, in their alleged sole and unreviewable discretion, find it "more likely than not" that the transferee "will" be tortured. Resp. Br. Exhibit A at ¶ 6; Exhibit B at ¶ 4.

Such claims of unfettered discretion have been repeatedly rejected by the federal courts in recent cases, including the Supreme Court's decision in *Rasul*, 124 S. Ct 2686. As the United States District Court for the District of South Carolina astutely observed, in rejecting yet another

recent argument for unfettered executive discretion, "[c]ertainly, Respondent does not intend to argue here that, just because the President states that Petitioner's detention is 'consistent with the laws of the United States . . .' that makes it so. Not only is such a statement in direct contravention to the well settled separation of powers doctrine, it is simply not the law." *Padilla v. Hanft*, No. 2:04-2221-26 (D.S.C., filed February 28, 2005) (AJ). When a federal litigant is properly before a Court that has exercised jurisdiction over the underlying claims in a case, that litigant must be provided a meaningful opportunity to contest a transfer seeking to place him outside the Court's jurisdiction or into the hands of torturers.

For this reason, the Respondents' lengthy discussion of extradition proceedings is simply beside the point. *See* Resp. Br. at 16-19. This is not an "extradition" issue, for the Government in no way claims that the "renderings" it is utilizing in this context follow the formal process of extradition or its attendant procedural protections at all. Even if it were, Petitioners also have raised a claim that their *current* detention is illegal under United States law, and the Supreme Court has expressly held that this Court has jurisdiction over Petitioners' substantive claims.

**III. Respondents' Separation of Powers' Concerns are Unwarranted**

Respondents claim that an order requiring advance notice of transfer would "trample on the separation of powers." Resp. Br. at 20. It is important to note that it is not clear at all that granting *this* motion will ever prevent any transfers the Government wishes to effect. Indeed, Petitioners may never even try to prevent any future transfer. All that is sought here is the modest relief of 30 days' advance notice of the Government's intent to transfer the Petitioner. If that motion is granted and the Government provides such notice, Petitioners may well decide not to challenge the Government's proposed transfer.[6] Alternatively, if the motion is granted, the

[6] Indeed, if Mr. Waxman's statement about how most of the rendered detainees have since been released by foreign governments is correct, *see* Resp. Br. Exhibit A at ¶ 5, one can expect that

Government may decide not to render Petitioner into another country's detention. Thus, the Respondents' dire warnings of judicial interference in foreign policy decisions of the Executive Branch, and separation of powers concerns are grossly premature at this stage.

The limited relief Petitioners' motion seeks is quite modest. In *el-Mashad, et al. v. Bush, et al.*, No. 05-0270 (Feb. 14, 2005) (JR) (attached as Exhibit G), for example, the respondents stated in their pleadings that at least six weeks would elapse between any decision to transfer a detainee and the actual transfer. *See id.* at 2. Under such circumstances, this Court has the authority to preserve its jurisdiction by ordering Respondents to simply give notice of a decision already made, during this interim period, before the transfer is carried out. The requested relief is similar to the requirement ordered by Judge Green in *Habib v. Bush*, No. 02-1130 (Nov. 29, 2004) (attached as Exhibit H) (denying TRO without prejudice, but noting that "[s]hould there be any chance that the circumstances upon which the Application was based will in fact arise, counsel for respondents shall provide counsel for petitioner at least five business days of advanced notice, which should be sufficient time to allow counsel for petitioner to renew the Application.").

## CONCLUSION

For the foregoing reasons, in ruling on the Respondents' pending motion for a stay of these proceedings, Petitioners respectfully request that this Court order Respondents to provide 30 days' notice to the Court and counsel of any transfer of Petitioner out of the facility at Guantánamo Bay.

---

most of the 30-day notices will *not* lead to a transfer challenge – unless there is a true risk of torture.


Respectfully submitted,

___/s/ Daniel Mach___________________
One of the Attorneys for Petitioner

Dated: December_6_, 2005

Thomas P. Sullivan
Jeffrey D. Colman
David J. Bradford
Patricia A. Bronte
Wade A. Thomson
Maya D. Nath
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
Tel: (312) 923-9350
Fax: (312) 527-0484

Daniel Mach (Admitted in D.D.C.)
JENNER & BLOCK LLP
601 Thirteenth Street, N.W., Suite 1200
Washington, D.C. 20005-3823
Tel: (202) 639-6000
Fax: (202) 639-6066

*Of Counsel*
Barbara Olshansky (BO3635)
Tina Monshipour Foster (TF5556)
Gitanjali S. Gutierrez (GG1234)
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6464
Fax: (212) 614-6499

**CERTIFICATE OF SERVICE**

I hereby certify that true and correct copies of the Reply Brief in Support of the Motion for an Order Requiring Respondents to Provide the Court and Counsel for Petitioners with 30 Days' Advance Notice of Any Removal of Petitioner from Guantánamo was served upon the following person by e-mail on the 6th day of December, 2005, and by First Class U.S. Mail on the 7th day of December, 2005:

Preeya M. Noronha
Trial Attorney
Civil Division
Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530
email: preeya.noronha@usdoj.gov

______/s/ Daniel Mach______________
Daniel Mach