IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FAHD SALIH SULAYMAN AL JUTAYLI,       )
                                       )
                                       )
                                       )
           Petitioner,                 )
                                       )
     v.                                )       Civil Action No. 05-1669 (TFH)
                                       )
GEORGE W. BUSH, *et al.,*              )
                                       )
           Respondents.                )
_____)

## DECLARATION OF TERESA A. McPALMER

        Pursuant to 28 U.S.C. § 1746, I, Commander Teresa A. McPalmer, Judge Advocate General's Corps, United States Navy, hereby state that to the best of my knowledge, information, and belief, the following is true, accurate and correct:

        1.      I am the Legal Advisor to the Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC).  In that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

        2.      I hereby certify that the documents attached hereto constitute a true and accurate copy of the portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner Fahd Salih Sulayman al Jutayli that are suitable for public release.  The portions of the record that are classified or considered law enforcement sensitive are not attached hereto or were redacted by an OARDEC staff member. This staff member also redacted information that would personally identify certain U.S. Government personnel in order to protect the personal privacy and security of those individuals.

        I declare under penalty of perjury that the foregoing is true and correct.


Dated: _22 December 2005_                        _Teresa A. McPalmer_
                                                 Teresa A. McPalmer
                                                 CDR, JAGC, U. S. Navy



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: **756**

**23 JAN 2005**

~~FOR OFFICIAL USE ONLY~~

From:  Director, Combatant Status Review Tribunal

Subj:  **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 177**

Ref:  (a) Deputy Secretary of Defense Order of 7 July 2004
      (b) Secretary of the Navy Order of 29 July 2004

1.  I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN # 177 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2.  This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

~~FOR OFFICIAL USE ONLY~~

UNCLASSIFIED

18 Jan 05

MEMORANDUM

From:  Assistant Legal Advisor
To:    Director, Combatant Status Review Tribunal
Via:   Legal Advisor

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
       FOR DETAINEE ISN # 177

Ref:   (a) Deputy Secretary of Defense Order of 7 July 2004
       (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl:  (1) Appointing Order for Tribunal # 12 of 29 September 2004
       (2) Record of Tribunal Proceedings

1.  Legal sufficiency review has been completed on the subject Combatant Status Review Tribunal in accordance with references (a) and (b).  After reviewing the record of the Tribunal, I find that:

   a.  The detainee was properly notified of and actively participated in the Tribunal process. The detainee provided an unsworn oral statement at the Tribunal hearing.

   b.  The Tribunal was properly convened and constituted by enclosure (1).

   c.  The Tribunal substantially complied with all provisions of references (a) and (b). Note that some information in exhibit R-9 was redacted.  The FBI properly certified in exhibit R-2 that the redacted information would not support a determination that the detainee is not an enemy combatant.

   d.  The detainee did not request that any witnesses or evidence be produced.

   e.  The Tribunal's decision that detainee # 177 is properly classified as an enemy combatant was unanimous.

2.  The proceedings and decision of the Tribunal as reflected in enclosure (2) are legally sufficient and no corrective action is required.

3.  I recommend that the decision of the Tribunal be approved and the case be considered final.

BREE A. ERMENTROUT
CDR, JAGC, USNR

UNCLASSIFIED



### Department of Defense
#### Director, Combatant Status Review Tribunals

29 Sep 04

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #12

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

      **MEMBERS:**

███████████████ Colonel, U.S. Marine Corps Reserve; President

███████████████ Lieutenant Colonel, JAGC, U.S. Army;
Member (JAG)

███████████████ Lieutenant Colonel, U.S. Air Force; Member

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Navy



# HEADQUARTERS, OARDEC FORWARD
## GUANTANAMO BAY, CUBA
### APO AE 09360

27 December 2004

MEMORANDUM FOR DIRECTOR, CSRT

FROM:  OARDEC FORWARD Commander ICO ISN 177

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN██████.

FOR

CHARLES E. JAMISON
CAPT, USN

SECRET//NOFORN//X1

**(U) <u>Combatant Status Review Tribunal Decision Report Cover Sheet</u>**

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (4).


(U) TRIBUNAL PANEL:    #12

(U) ISN#:    177

Ref:    (a) (U) Convening Order for Tribunal #12 of 29 September 2004 (U)
       (b) (U) CSRT Implementation Directive of 29 July 2004 (U)
       (c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl:   (1) (U) Unclassified Summary of Basis For Tribunal Decision (U)
       (2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
       (3) (U) Summary of Detainee/Witness Testimony (U/FOUO)
       (4) (U) Copies of Documentary Evidence Presented (S/NF)
       (5) (U) Personal Representative's Record Review (U)

1. (U) This Tribunal was convened on 7 October 2004 by references (a) and (b) to make a determination as to whether the Detainee meets the criteria to be designated as an enemy combatant, as defined in reference (c).

2. (U) On 7 October 2004 the Tribunal determined, by a preponderance of the evidence, that Detainee #177 is properly designated as an enemy combatant, as defined in reference (c).

3. (U) In particular, the Tribunal finds that this detainee is a member of, or affiliated with, both Taliban and al Qaida forces engaged in hostilities against the United States and its coalition partners, as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).

Colonel, U.S. Marine Corps
Tribunal President

UNCLASSIFIED//~~FOUO~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

## (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____#12_____
ISN #: _____177_____

## 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this Detainee is properly classified as an enemy combatant and is a member of, or affiliated with, al Qaida and was also part of, or supporting, Taliban forces engaged in hostilities against the United States or its coalition partners. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

## 2. Synopsis of Proceedings

The unclassified evidence presented to the Tribunal by the Recorder alleged that the Detainee is a member of, or supported, al Qaida and was supposedly recruited to fight in Kashmir and Chechnya. The Detainee joined the Taliban and received training at the ██████████training camp in Afghanistan on the Kalashnikov rifle, PK machine gun and a Russian pistol. His name was also discovered on a computer hard drive associated with a senior al Qaida member. The Detainee chose to participate in the Tribunal process. He called no witnesses, requested no documents be produced and made an unsworn verbal statement with the assistance of his Personal Representative. The Detainee denied the allegations against him, stating that they were not true, although he did say that he trained with a handgun. He was captured after crossing into Pakistan.

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

    a. Exhibits: D-a and R-1 through R-16.

## 4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses

The Detainee requested no witnesses for the hearing or that any additional evidence be produced; therefore, no rulings on these matters were required.

UNCLASSIFIED//~~FOUO~~

### 5. Discussion of Unclassified Evidence

The Tribunal considered the following unclassified evidence in making its determinations:

    a. The Recorder offered Exhibits R-1 and R-2 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2, the Request for Redaction of its documents by the Federal Bureau of Investigation, provided no usable evidence. Accordingly, the Tribunal had to look to classified exhibits for support of the Unclassified Summary of Evidence.

    b. The Tribunal considered the Detainee's unsworn testimony. A summarized transcript of the Detainee's sworn testimony is attached as CSRT Decision Report Enclosure (3). In sum, the Detainee testified that he did not agree with the Unclassified Summary of Evidence which states that he was recruited to fight by a Jihadist recruiter in Saudi Arabia, in Kashmir and Chechnya, that he joined the Taliban after receiving a fatwa from Sheik ▓▓▓▓▓▓ at the Imam Muhammad Bin Saud College in Saudi Arabia, that he received training at ▓▓▓▓▓▓ training camp in Afghanistan on the Kalashnikov rifle, PK machine gun and Russian pistol, and that one of the Detainee's aliases appeared on a computer hard drive associated with a senior al Qaida member. Notwithstanding the Detainee's testimony that he did not agree with the Unclassified Summary, he did admit that portions of it were true (e.g., he trained with a handgun).

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

### 6. Consultations with the CSRT Legal Advisor

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

### 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

    a. The Detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was requested or deemed necessary.

    b. The Detainee understood the Tribunal proceedings. He asked no questions regarding his rights and actively participated in the hearing.

UNCLASSIFIED//~~FOUO~~

c. The Detainee is properly classified as an enemy combatant and was part of, or supporting, both al Qaida and Taliban forces, which are engaged in hostilities against the United States and its coalition partners.

## 8. Dissenting Tribunal Member's report

None. The Tribunal reached a unanimous decision.

Respectfully submitted,



Colonel, U.S. Marine Corps
Tribunal President

UNCLASSIFIED//~~FOUO~~

## Summarized Unsworn Detainee Statement

The words that you said are not true. The accusations you presented are not true. I don't understand what you want me to do. Do you want me to talk to the Personal Representative? What should I tell him?

*The Tribunal President advised the Detainee it was his opportunity to tell the Tribunal his story.*

I did not go to Chechnya or Kashmir. I never met that ███████ that was mentioned and I never fought with the Taliban or Al Qaeda. I never fought against the coalition. I never trained on the machine guns.

The name that you mentioned that was captured, I don't know anything about that name. The ███████ raining camp - I didn't know it was the ███████ raining camp. I didn't know anything about Al Qaeda. All this I knew after I came here.

*The Personal Representative asked the Detainee if he would like to review the notes from their meeting. The Detainee said yes.*

## Statement on Behalf of Detainee by Personal Representative

*The Personal Representative addressed each bullet on the Unclassified Summary.*

- 3(a)     **The Detainee is associated with Al Qaeda and is a Taliban fighter.**

   That's not true.

- 3(a)(1)  **Detainee was recruited to fight in Kashmir and Chechnya by a Jihadist recruiter in Saudi Arabia.**

   That's not true. Detainee was not recruited.

- 3(a)(2)  **Detainee joined the Taliban after receiving a Fatwa from Sheik█** ███████ **at the Imam Muhammad Bin Saud College in Burayda, Saudi Arabia.**

   Not true. Detainee went alone and made decision to go alone.

- 3(a)(3)  **Detainee trained at** ███████ **raining camp in Afghanistan during September 2001.**

   Detainee does not know ███████ Detainee was at a camp, but doesn't know if it was called ███████ or not.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

- **3(a)(4)  Detainee was trained on the Kalashnikov rifle, Pakistan machine gun, and a Russian pistol at the** ▓▓▓▓▓▓ **training camp.**

  Detainee was only trained on the handgun.

- **3(a)(5)  One of Detainee's known aliases was on a list of captured Al Qaeda members that was discovered on a computer hard drive associated with a senior Al Qaeda member.**

  Detainee has no knowledge of this hard drive. The first time I learned of the existence of Al Qaeda was here at Guantanamo Bay. The Detainee is not even sure what alias they are referring to.

- **3(b)  The Detainee participated in military operations against the coalition.**

  This is not true. Detainee was only in Afghanistan 2 months and that was only enough time to train.

- **3(b)(1)  Detainee was a fighter at Tora Bora.**

  Not true. Detainee was in Tora Bora and was captured in Pakistan after he crossed the border. Detainee was never near any fighting with the Taliban in Tora Bora.

*The Personal Representative stated that this information summarized what was discussed between the Detainee and him.*

## Summarized Unsworn Detainee Statement

The 2 months I was in Afghanistan, I wasn't training the whole time. It wasn't enough [time] for training or fighting or anything like that. I just wanted to get out [of Afghanistan].

I was only in Tora Bora because it was the way to get out. I was told if I wanted to get out I had to go through Tora Bora.

I got out [of Afghanistan] and was captured by the Pakistani authorities.

## Questions by the Tribunal Members

Q:    You said you decided on your own to go to Afghanistan. Can you tell us why that was?

A:    For training.

ISN# 177
Enclosure (3)
Page 2 of 9

UNCLASSIFIED//~~FOUO~~

Q:    What training did you desire?

A:    Just light training. I didn't know what kind of training it was.

Q:    Why did you need to go all the way to Afghanistan to get light training? Could you not have received it in your home country?

A:    I didn't know there were problems in Afghanistan.

Q:    What made you decide to go to Afghanistan at the time you did?

A:    No reason. It was just a vacation I had.

Q:    It had nothing to do with receiving a Fatwa from a Sheik?

A:    No.

Q:    Why did you desire to have this light training?

A:    Just normal.

Q:    How long were you planning to stay in Afghanistan?

A:    I would come back before school started. Maybe 2 months.

Q:    You had no desire to fight in Kashmir or Chechnya?

A:    No.

Q:    How did you make your trip to Afghanistan? How did you know how to get there?

A:    Normal. Travel from country to country doesn't require knowledge.

Q:    Who funded your travel to Afghanistan?

A:    I have money.

Q:    You took enough money to sustain yourself for your entire time in Afghanistan?

A:    That's what I thought.

Q:    You got to Afghanistan and went to ▓▓▓▓▓▓ or a while and you also spent time in Tora Bora trying to get out? What else did you do?

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

A:    I didn't stay in ▓▓▓▓▓ for 2 months.

Q:    Your total time in Afghanistan was 2 months, then?

A:    Approximately, yes.

Q:    Where else did you go besides ▓▓▓▓▓ and Tora Bora?

A:    I passed by Kabul and Jalalabad and Tora Bora.

Q:    Was there any time there that you helped the Taliban fight against the Northern Alliance?

A:    No.

Q:    What did you do when you were in Kabul and Jalalabad?

A:    I didn't stay there. It was just to get out.

Q:    So, you went through Tora Bora to Pakistan. The Pakistan authorities captured you at the border, or where?

A:    A little while after the border.

Q:    When you were captured, did you have your passport with you?

A:    No.

Q:    Can you explain why not?

A:    I didn't have it with me. I left it.

Q:    Why would you leave it and not take it with you?

A:    Before I went to receive training, I left it in a place so I would not lose it.

Q:    You thought you were going to be able to travel through Pakistan with no passport?

A:    I was going to the Saudi Embassy.

Q:    Please explain the circumstances of your capture in Pakistan.

A:    The Pakistani police saw me and captured me.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

Q:    Were you going to say something else?

A:    They captured me on the basis that they would take me to the embassy.  Suddenly I found myself in prison.

Q:    Were you by yourself or with a group of people?

A:    By myself.

Q:    So, they captured you and put you in a prison in Pakistan for a while?

A:    Yes.

Q:    Do you remember how long you were there?

A:    I don't remember.

Q:    A long time or short time?

A:    Short, not long.

Q:    Eventually you came into American custody?

A:    Yes.  After that, they took me to the American authorities.

Q:    You said, when you were captured you didn't have your passport.  Did you have any money or weapons with you?

A:    No.

Q:    Can you explain why your name or alias is associated with Al Qaeda?

A:    I don't know about this.  This is something the interrogator talked to me about.  I told him I didn't know anything about it.

Q:    Were you a student prior to leaving your home country for Afghanistan?

A:    Yes.

Q:    Did you have any other occupation or source of income?

A:    I worked for a short while.

Q:    That's how you saved up enough money to travel to Afghanistan?

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

A:    No, I had money from school and this work.

Q:    What happened to the money you took with you to Afghanistan?

A:    It was with my passport.

Q:    So, you lost the money and your passport also?

A:    Yes.

Q:    Who did you give your money and passport to?

A:    A person I do not remember.

Q:    Where did you give it to them and why?

A:    So that he could take care of it for me and it would not get lost.

Q:    Did you choose to do this or did this person persuade you to do this?

A:    He suggested it to me.

Q:    The light training, I assume it is military training?

A:    Did I know it was military?

Q:    Yes. Was it military training that you received?

A:    Just physical training...body...that gun...that's it.

Q:    The handgun?

A:    Yes.

Q:    You actually practiced with and fired the handgun?

A:    Just a little bit.

Q:    Were you ever issued a handgun?

A:    No.

Q:    You never took one away from training?

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

A:     For me?

Q:     Yes.

A:     No.

Q:     For anyone else?

A:     No.

## Questions by the Tribunal President

Q:     Was it at the training camp that you turned over your passport and money?

A:     No.

Q:     When was that; before the training camp?

A:     Before that there was a small house.  As soon as I arrived there they put me in this house.

Q:     They?  Who are they?

A:     The Afghan driver that brought me.

Q:     Did you make arrangements for this training before you traveled to Afghanistan?

A:     No.

Q:     How did you find out about this training facility?

A:     The Afghan took me straight there.

Q:     You did not know this Afghan?

A:     No.

Q:     But you trusted your passport and money with him?

A:     It's a normal thing.  I didn't know anything was wrong.

Q:     When you decided to leave Afghanistan, why didn't you try to recover your passport and money before starting your trek to Pakistan?

A:     Time would not allow.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

Q:    Why?

A:    Because I just wanted to leave. I didn't have time to look for it. I just went straight to Kabul.

Q:    From Kabul, you went to Tora Bora and then across the mountains into Pakistan?

A:    Yes, I passed through Jalalabad.

Q:    You were alone all this time?

A:    No.

Q:    You traveled with companions that provided assistance for your departure?

A:    I had 10 with me.

Q:    Were these the 10 that helped you find your way through the mountains into Pakistan?

A:    No. They were just traveling normal. I didn't know where they were going.

Q:    When you entered Pakistan, you were by yourself?

A:    The first time? When I was leaving?

Q:    When you were attempting to leave Afghanistan and trying to get into Pakistan, were you by yourself?

A:    Yes.

Q:    How did you find your way through a mountainous terrain you had never been through before into Pakistan?

A:    I had the Afghani with me. He told me. But I didn't have any of the 10 people with me.

Q:    I'm starting to get confused. You said you traveled into Pakistan by yourself and you were captured by yourself. Now you're saying you had the Afghani help you cross the border into Pakistan.

A:    You asked me if anyone was with me. I said yes, there were 10 people with me and then you asked me directly if there was anyone with me when I went into

UNCLASSIFIED//FOUO

Pakistan. I thought you were talking about any of the 10 people who were with me before, so I said no. What is strange about that?

Q:    Was there anyone with you when you crossed the border into Pakistan?

A:    Yes, just the Afghan guide.

Q:    Did he stay with you as you traveled into Pakistan?

A:    Did not travel. As soon as they [Pakistani police] saw me they captured me. I didn't see him [the Afghan man] after that. I don't know if they caught him or if he left before.

Q:    So, you don't know if they captured him as well?

A:    I don't know if they captured him, arrested him or if he left.

Q:    Why would he help you find your way to Pakistan? If you had no money, how could you pay him for his services?

A:    I didn't pay him. I met someone before him who wanted to help me get out. He introduced me to this Afghani and said he would help me get out.

Q:    I find it unusual that an individual would risk his safety and take the chance of getting captured to help someone that did not pay him.

A:    Maybe the person I met before is the one that paid him. I don't know.


## AUTHENTICATION

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.



Colonel, U.S. Marine Corps
Tribunal President

UNCLASSIFIED//FOUO

# DETAINEE ELECTION FORM

**Date:** 05 Oct 04

**Start Time:** 08:16

**End Time:** 09:02

**ISN#:** 177

**Personal Representative:** LTCOL ███████
(Name/Rank)

**Translator Required?** YES          **Language?** ARABIC

**CSRT Procedure Read to Detainee or Written Copy Read by Detainee?** YES

--------------------------------------------------------------

**Detainee Election:**

[X]    **Wants to Participate in Tribunal**

[ ]    **Affirmatively Declines to Participate in Tribunal**

[ ]    **Uncooperative or Unresponsive**

**Personal Representative Comments:**

No witnesses. Polite and calm.

Personal Representative: ███████████████

UNCLASSIFIED//FOUO

Exhibit D-a

UNCLASSIFIED

## Combatant Status Review Board

TO: Personal Representative

FROM: OIC, CSRT (23 September 2004)

Subject:  Summary of Evidence for Combatant Status Review Tribunal – AL JUTAYLI, Fahd Salih Sulayman.

1.  Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2.  An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners.  This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3.  The United States Government has previously determined that the detainee is an enemy combatant.  This determination is based on information possessed by the United States that indicates that the detainee is associated with al Qaida and participated in military operations against the United States and its coalition partners.

   a.  The detainee is associated with al Qaida and is a Taliban fighter:

      1.  Detainee was recruited to fight in Kashmir and Chechnya by a Jihadist recruiter in Saudi Arabia.

      2.  Detainee joined the Taliban after receiving a Fatwa from ▓▓▓▓▓▓▓▓ at the Immam Muhammad Bin Saud College in Burayda, Saudi Arabia.

      3.  Detainee trained at ▓▓▓▓ training camp in Afghanistan during September 2001.

      4.  Detainee was trained on the Kalishnikov rifle, PK machine gun, and a Russian pistol at the ▓▓▓▓ training camp.

      5.  One of Detainee's known aliases was on a list of captured al Qaida members that was discovered on a computer hard drive associated with a senior al Qaida member.

   b.  The detainee participated in military operations against the coalition.

      1.  Detainee was a fighter at Tora Bora.

4.  The detainee has the opportunity to contest his designation as an enemy combatant.  The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant.  The Tribunal President will determine the reasonable availability of evidence or witnesses.

UNCLASSIFIED

*EXHIBIT R-1*

# Memorandum



To    :    Department of Defense                Date  09/20/2004
           Office of Administrative Review
           for Detained Enemy Combatants
           Col. David Taylor, OIC, CSRT

From  :    FBI GTMO
           Counterterrorism Division
           Asst. Gen. Counsel ████████████████

Subject    REQUEST FOR REDACTION OF
           NATIONAL SECURITY INFORMATION
           ██████████████████

          Pursuant to the Secretary of the Navy Order of 29 July
2004, Implementation of Combatant Review Tribunal Procedures for
Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba,
Section D, paragraph 2, the FBI requests redaction of the
information herein marked[1].  The FBI makes this request on the
basis that said information relates to the national security of
the United States[2].  Inappropriate dissemination of said
information could damage the national security of the United
States and compromise ongoing FBI investigations.

CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A
DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

          The FBI certifies the aforementioned redaction contains
no information that would support a determination that the
detainee is not an enemy combatant.

          The following documents relative to ISN 177 have been
redacted by the FBI and provided to the OARDEC:

FD-302 dated 05/24/2003

---

[1]Redactions are blackened out on the OARDEC provided FBI
document.

[2]See Executive Order 12958

R-2

Memorandum from ████████ to Col. David Taylor
Re:  REQUEST FOR REDACTION, 09/20/2004


    If you need additional assistance, please contact Asst.
Gen. Counsel ████████████████, ████ ████████████████████████████████ or Intelligence Analyst (IA) ████████████████

UNCLASSIFIED//~~FOUO~~

## Personal Representative Review of the Record of Proceedings

I acknowledge that on _12_ October 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #177.

_X_ I have no comments.

___ My comments are attached.



_____ Lt COL, USAF
Name

Date _12 OCT 04_

Signature

ISN #177
Enclosure (5)